| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 11 | In re: | CASE NO. 01CV1237 J (WMc) |
| 12 | IMMUNE RESPONSE SECURITIES LITIGATION | **ORDER:** |
| 13 | | **1) APPROVING CLASS ACTION SETTLEMENT;** |
| 14 | | |
| 15 | | **2) APPROVING PLAN OF ALLOCATION; AND** |
| 16 | | **3) APPROVING ATTORNEYS' FEES AWARD AND** |
| 17 | | **REIMBURSEMENT OF EXPENSES.** |

On October 3, 2006, the Parties entered into a Stipulation of Settlement. [Doc. No. 147.] Subsequently, the proposed settlement was submitted to the Court for preliminary approval. By order dated March 14, 2007, this Court certified the Class, preliminarily approved the class action settlement, and approved the notice to Class Members. [Doc. No. 148.] The Parties now move for final approval of the proposed class action settlement. [Doc. No. 149.] On May 21, 2007, this matter came before the Court for a fairness hearing regarding judicial approval of the Parties' proposed settlement in this class action. Pursuant to the Court's Order, the Parties filed supplemental briefing regarding the requested reimbursements. [Doc. Nos. 152-56.]

*Background*

Immune Response Corporation ("IRC") is a biopharmaceutical company that develops immune-based therapies for the treatment of HIV. (Compl. ¶ 1.) IRC's stock is traded on NASDAQ. Defendant Dennis J. Carlo, Ph.D. ("Carlo"), is a co-founder of IRC and was its Chief Executive Officer during the Class Period. Defendant Dr. Ronald B. Moss ("Moss") was Director of Medical and Scientific Affairs until January 2000, and then was named Vice President of Medical and Scientific Affairs. To fund studies, IRC collaborated with Agouron Pharmaceuticals, Inc., a wholly owned subsidiary of Pfizer, Inc.

Between July 10, 2001, and August 17, 2001, ten securities class action complaints were filed in the United States District Court for the Southern District of California on behalf of all persons who purchased Defendant IRC's publicly-traded securities between May 17, 1999, and July 6, 2001 (the "Class Period"). On April 4, 2002, this Court consolidated the ten class action complaints. [Doc. No 18.] Plaintiffs allege that IRC and its representatives made false and misleading statements about the efficacy of REMUNE – a drug IRC developed for the treatment of human immunodeficiency virus ("HIV"). Specifically, Plaintiffs allege securities fraud under the 1933 Securities Exchange Act §§ 11, 12(a)(2), and 15, as well as, Securities Exchange Commission ("SEC") Rule 10b-5 and §§ 10(b), 20(a) of the 1934 Act.

On June 7, 2005, the Court denied Defendants' Motions to Dismiss. On February 7, 2006, the Parties engaged in mediation before the Honorable Howard B. Wiener (Ret.), and Lead Plaintiffs and all Defendants except Agouron reached an "agreement-in-principle" to settle their claims in the litigation. Shortly thereafter, on February 28, 2006, Lead Plaintiffs and Agouron reached an agreement-in-principle to settle their claims in the litigation.

On March 14, 2007, this Court preliminarily approved the class action settlement and approved the notice to Class Members. (*See generally* Order of Prelim. Approval.) The Class upon whose behalf this settlement is made was certified as:

> All persons who purchased Immune Response Corporation publicly traded securities at any time during the period between May 17, 1999, and July 6, 2001, inclusive. Excluded from the Class are the Defendants, members of the immediate families of the Individual Defendants, any entity in which any

> Defendant has or had a controlling interest, directors and officers of Immune Response Corporation and Agouron Pharmaceuticals, Inc., and the legal representatives, heirs, administrators, successors, or assigns of any such excluded person. Also excluded from the Class are those persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency of and Proposed Settlement of Class Action.

(*Id.* at 11.) The Parties are now before the Court to obtain final judicial approval of the class action settlement.

### *Legal Standard*

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any dismissal or settlement in a class action lawsuit and provides that notice of the proposed dismissal or settlement must be given to all class members. Fed. R. Civ. P. 23(e). The primary purpose of Rule 23(e) is to protect class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). Consequently, courts must conduct a fairness hearing to determine whether to approve the class action settlement. *See*, *e.g.*, *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

"Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable." *Officers for Justice*, 688 F.2d at 625; *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). When determining whether approval of a settlement is warranted, courts consider

> several factors which may include, among others, some or all of the following: [1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Torrisi*, 8 F.3d at 1375; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Further, "[t]o survive appellate review, the district court must show it has explored comprehensively all [fairness] factors." *Hanlon*, 150 F.3d at 1026 (citing *Protective*

*Comm. For Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 434 (1968)). Finally, "the settlement may not be the product of collusion among the negotiating parties." *Mego*, 213 F.3d at 458 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).

*Discussion*

**I.  Notice to Class Members**

The first issue the Court must address is notice to the Class. The Ninth Circuit has summarized the Court's procedural obligation as follows:

> The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice; the notice must indicate that a dissident can object to the settlement and to the definition of the class; each objection must be made a part of the record; those members raising substantial objections must be afforded an opportunity to be heard with the assistance of privately retained counsel if so desired, and a reasoned response by the court on the record; and objections without substance and which are frivolous require only a statement on the record of the reasons for so considering the objection.

*Officers for Justice*, 688 F.2d at 624 (footnote and citations omitted).

Pursuant to the Order issued on March 14, 2007, the Notice of Pendency of Class Action and Proposed Settlement ("Notice") and the Proof of Claim and Release Form were mailed to 41,173 Class Members beginning on or before March 24, 2007. (*See* Mot. Final Approval of Settlement at 1; Sylvester Decl. at 1-2.) The Notice provides a description of the nature of the action and the issues involved in the litigation. (*See* Sylvester Decl., Ex. A at 1-4.) The Notice also contains a concise and clear statement of the definition of the Class that has been certified. (*See id*. at 3.) The Notice provides the procedure by which an individual may request an appearance at the Settlement Hearing, as well as how an individual may exclude herself from the Class. (*See id.* at 5-6.) The Notice also discusses the binding effect of the class judgment on Class Members. (*See id*. at 5-7.) The Notice called for all objections to be postmarked and mailed no later than May 7, 2007. To date, no objections to the settlement have been filed. (*See* Mot. Final Approval of Settlement at 2.) Three Class Members, Steven A. Schuster, Kenneth D. Mulzer Sr., and Shizuko O.

Mihata, have indicated their desire to opt out of the Class.[1]  (*See* Ex. 1; Prop. Order for Final Judgment).  The Summary Notice was also posted on the internet and published in the national edition of *Investor's Business Daily*.  (*See* Sylvester Decl. at 2.)

The Court **FINDS** that the notice afforded to Class Members is adequate and sufficient to inform Class Members of their rights.

## II.     Fairness Factors

As an initial matter, "the fact that the settlement agreement was reached in arm's length negotiations after relevant discovery [has] taken place create[s] a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998) (citing *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981)).  Here, the Parties voluntarily engaged in mediation before the Honorable Howard B. Wiener (Ret.) through which Lead Plaintiffs and all Defendants except for Agouron reached an agreement-in-principle to settle the claims in the litigation.  (*See* Mot. for Prelim. Approval at 2.)  Subsequently, Lead Plaintiffs and Agouron also reached an agreement-in-principle to settle.  (*See id.*)  Accordingly, such negotiations are highly indicative of fairness.

The inquiry now before the Court is whether the proposed settlement is fundamentally fair, adequate, and reasonable such that the Court may approve the class action settlement.  The Court will address each of the several factors set forth above.

### A.     *The Strength of Plaintiffs' Case*

Plaintiffs' case involves federal securities claims asserted against Defendants under Section 10(b) of the Securities Exchange Act of 1934 and Section 11 of the Securities Act of 1933.  (*See* Mot. Final Approval of Settlement at 6.)  In order to prevail on a Section 10(b) claim, Plaintiffs would have the burden of establishing:  "(1) a misrepresentation or omission of a material fact, (2) reliance, (3) scienter, and (4) resulting damages." *Paracor*

---

[1] Although Defendants object to the propriety of Mr. Schuster and Mr. Mulzer, Sr.'s notices indicating that they desire to opt-out, the Court includes them only as a matter of record. The Court at this time is not making a finding that such opt-outs are adequate or valid.

1  *Finance, Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) (citing
2  *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1281 (9th Cir. 1982)). Accordingly,
3  Plaintiffs contend that they "would have to prove Defendants participated in the public
4  dissemination of misleading information, that the information was material to investors in
5  determining whether to purchase Immune Response securities, that the information
6  materially affected the price of Immune Response securities, and that Defendants withheld
7  information either with actual intent to deceive, manipulate, or defraud, or that Defendants
8  recklessly disregarded these facts and their consequences." (*See* Mot. Final Approval of
9  Settlement at 6.)

10       To prevail on the Section 11 claim, Plaintiffs would have to prove "(1) that the
11 registration statement contained an omission or misrepresentation, and (2) that the omission
12 or misrepresentation was material, that is, it would have misled a reasonable investor about
13 the nature of his or her investment." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403-04
14 (9th Cir. 1996) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994)). However,
15 "[n]o scienter is required for liability under § 11; defendants will be liable for innocent or
16 negligent material misstatements or omissions." *Id.* (citing *Herman & MacLean v.*
17 *Huddleston*, 459 U.S. 375, 382 (1983)).

18       Plaintiffs believe that their claims are meritorious and fully supported by the
19 evidence obtained. (*See* Mot. Final Approval of Settlement at 7.) Plaintiffs claim that their
20 "investigation included identifying and contacting former Immune Response employees,
21 and the scientists who performed the REMUNE study, and retention and consultation with
22 experts in the drug at issue, the FDA approval process, materiality, loss causation and
23 damages." (*Id*. at 5.) Additionally, Plaintiffs survived Defendants' Motion to Dismiss and
24 Defendants' subsequent challenges to this Court's order. However, Plaintiffs contend that
25 "Defendants were prepared to mount a vigorous defense to Lead Plaintiffs' claims." (*Id.* at
26 7.) According to Plaintiffs, "Immune Response Defendants have maintained that Lead
27 Plaintiffs' Class Period is improperly long and that Lead Plaintiffs sued prematurely." (*Id*.)
28 Also, Plaintiffs assert that the "Immune Response Defendants also would continue to claim

that the market was fully aware of risks that REMUNE would not be deemed to be efficacious and that it would not necessarily complete clinical trials and be approved for marketing." (*Id.*) Additionally, Plaintiffs assert that Defendant "Agouron pressed credible arguments that none of the statements attributed to it were false or misleading." (*Id.*) The Court also recognizes that the issues of scienter and causation are complex and difficult to establish at trial.

At this time, it is not appropriate for the Court to attempt to settle these questions of law and fact:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the appellate court] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.

*Officers for Justice*, 688 F.2d at 625.  Rather, recognizing the apparent complexity of the case, the Court **CONCLUDES** that settlement is a prudent course.

**B.**   *The Risk, Expense, Complexity and Duration of Further Litigation*

As discussed above, this case involves complex legal and factual issues which have already been the subject of drawn out litigation.  Additionally, Plaintiffs assert that they "faced significant collectability issues with respect to the Immune Response Defendants. The Company admittedly had no money to fund a judgment or settlement—the only available source of funds was wasting insurance policies.  The longer litigation went on, less and less money was available to satisfy a judgment or settlement, because defense costs were depleting the policies." (*See* Mot. Final Approval of Settlement at 10.) Litigation would likely require costly discovery and the continued assistance of experts. The trial would have lasted several weeks, and the non-prevailing party would likely have appealed the judgment. (*See id.* at 11.)  Both Parties would thus have to expend a significant amount of resources if this litigation were to proceed.  Accordingly, the Court **FINDS** that this factor supports settlement.

**C.**     *The Risk of Maintaining Class Action Status*

As indicated above, Immune Response Defendants have maintained that the Class Period is improperly long, and thus, Defendants may desire to move for recertification of the class definition at trial based upon evidence produced during discovery.  This threat makes settlement more attractive to Plaintiffs.

**D.**     *Settlement Amount*

Pursuant to the proposed settlement, IRC Defendants will pay or cause to be paid $9,600,000.00 in settlement proceeds, and Defendant Agouron will pay or cause to be paid $400,000.00 in settlement proceeds.  (*See* Stip. of Settlement at 8.)  In addition, any amount remaining on the first $2,250,000.00 of the IRC Defendant's third-level insurer's policy after all defense costs in the litigation and derivative litigation have been satisfied, will be deposited in the escrow account for distribution to the Class.  (*See id*.)  The settlement terms are outlined in the Stipulation of Settlement.  (*See generally id*.)  The appropriateness of the requested attorneys' fees is reserved for discussion below.

There is no evidence to suggest that the settlement amount is not fair and reasonable.  Plaintiffs contend that the Parties engaged in lengthy settlement discussions before two retired judges.  Accordingly, the settlement is presumed to be fair.  Additionally, Plaintiffs assert that they are unaware of any objections by Class Members to the settlement agreement.

The Parties have drafted a plan of allocation that they contend is fair, reasonable, and adequate.  The Parties contend that this plan is fair to the Class as a whole by taking into consideration the strength of claims based on available evidence.  "Lead counsel discussed [the] theories of liability and damages with [a] damages consultant, who used this information along with available economic evidence to develop the plan currently before the Court for approval."   (*See* Mot. Final Approval of Settlement at 14; Corrected Dietrich Decl. at 21.)  Plaintiffs contend that the plan of allocation "reflects the reaction of the market to new information about Immune Response during the Class Period."  (*Id*.)  The plan provides a different formula based on three purchase periods; each reflecting the

market's reaction to each new piece of information.  (*Id.*)  Case law suggests that it is fair to allocate settlement proceeds according to the relative strengths and weaknesses of the various claims.  *In re Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353, 1365 (9th Cir. 1979); *see also In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985).  Accordingly, "lead counsel maintain that the plan of allocation will equitably apportion the net settlement proceeds among all eligible Class Members . . . ."  (*See* Mot. Final Approval of Settlement at 14.)  Finding no indication of unfairness in the settlement, the Court **APPROVES** the plan of allocation as reasonable and appropriate.

Lastly, Lead Plaintiff Scott Carroll seeks reimbursement for his time and expenses in the amount of $40,000.00.  Mr. Carroll contends that this amount represents his lost wages for 200 hours at an hourly rate of $200, which represents his compensation as a CEO.  (*See* Carroll Decl. at 2.)  Mr. Carroll states that he zealously performed his role as a Lead Plaintiff by engaging in periodic conferences, participating in the litigation, providing input into the case, keeping fully informed of the case, reviewing pleadings and motions, and participating in the settlement negotiations.  (*See id.* at 1.)  The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides that while "[t]he share of any . . . settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the . . . settlement awarded to all other members of the class[,] [n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. § 78u-4(a)(4).

On its face, the reimbursement to Mr. Carroll is reasonable.  In the supplemental information provided to the Court, Mr. Carroll states that he bases his hourly rate on income derived from the fifty-five residential apartment units, shopping center, fireworks business, and large department store that he owns and operates.  (*See* Supp. Decl. Scott Carroll at 1.)  Additionally, lead counsel indicated to the Court that the other Lead Plaintiff, Michael Baghdoian, is not requesting a similar reimbursement because he was not as

actively involved as Mr. Carroll. According to lead counsel, Mr. Carroll is also the shareholder with the most losses. Finding Mr. Carroll's requested reimbursement to be fair and reasonable, the Court **APPROVES** Mr. Carroll's reimbursement.

### E. *Discovery Completed Prior to Settlement*

Plaintiffs indicate that lead counsel has conducted "significant informal discovery and investigation on the matters alleged, even though formal discovery was stayed pursuant to the [PSLRA] while the Parties litigated Defendants' motions to dismiss." (*See* Mot. Final Approval of Settlement at 5.) Accordingly, the Court **FINDS** that the Parties have a clear view of the strengths and weaknesses of their cases.

### F. *Counsel's Experience and Views*

Both Parties are represented by experienced counsel and their mutual desire to adopt the terms of the proposed settlement, while not conclusive, is entitled to great deal of weight. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Both Parties' negotiation and adoption of the settlement terms, based on their familiarity with the law in this practice area and the strengths and weaknesses of their respective positions, suggests the reasonableness of the settlement. This factor clearly favors settlement.

### G. *Involvement of a Government Entity*

There are no government participants in this case. Thus, this factor is inapplicable.

### H. *Class Members' Reaction to the Proposed Settlement*

Pursuant to the Court's Order, Notice of Pendency of Class Action was sent to over 41,000 Class Members, published in *Investor's Business Daily*, and posted on the internet. The Notice called for all objections to be postmarked and mailed no later than May 7, 2007. To date, no objections to the settlement have been filed. (*See* Mot. Final Approval of Settlement at 2.)

### I. *The Settlement Did Not Involve Collusion or Fraud*

Here, Plaintiffs contend that the settlement is the product of arm's length negotiations and hard-fought litigation by experienced counsel on both sides of the case.

Additionally, settlement mediation sessions took place before the Honorable Daniel L. Weinstein (Ret.) and the Honorable Howard B. Wiener (Ret.).  There is nothing to suggest that the settlement involved collusion or fraud.

Accordingly, the Court **APPROVES** the settlement agreement and the plan of allocation.  Additionally, the Court **APPROVES** of Mr. Carroll's requested reimbursement.

### III.    Attorneys' Fees

Class counsel has requested that the Court approve a fee of 25% of the settlement award, *i.e*., $2,500,000, plus a reimbursement of "out-of-pocket" expenses of $261,971,79. (*See* Mot. for Approval of Fees at 1.)  Counsel argues that the fee is appropriate based on the complexity of litigation, the favorable result achieved, the normal fees for similar complex cases, the contingency fee nature of the representation, and the lack of objection to the proposed fees.  While the Parties appear to have agreed to the attorneys' fee award, "the district court [has] the authority and duty to pass upon the fairness of the attorneys' fees settlement independently of whether there [is] objection."  *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999).  For the reasons discussed below, the Court **APPROVES** of the proposed attorneys' fee arrangement.

### A.    *A Percentage of the Award Is an Appropriate Form of Attorneys' Fees*

Class counsel argues that "[i]n recent years, the percentage method of awarding fees has become an accepted, if not the prevailing, method for awarding fees in common fund cases in this Circuit and throughout the United States."  (Mot. for Approval of Fees at 1.) Pursuant to the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  However, "in common fund cases, no presumption in favor of either the percentage or the lodestar method encumbers the district court's discretion to choose one or the other."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994).  "As always, when

determining attorneys' fees, the district court should be guided by the fundamental principle that fee awards out of common funds be "reasonable under the circumstances." *Id.* (citing *State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)).

The Court of Appeals for the Ninth Circuit has "established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be 'adjusted upward or downward to account for any unusual circumstances involved in [the] case.' " *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). The Ninth Circuit has repeatedly affirmed the district court's employment of the percentage method. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Accordingly, the Court **FINDS** that attorneys' fees in the form of a percentage of the total award is reasonable. The Court now turns to whether 25% is reasonable under the circumstances of this case.

**B.**     ***Circumstances of This Case Favors a 25% Benchmark Rate***

"The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Vizcaino*, 290 F.3d at 1048. The determination of the reasonableness of an award must be "supported by findings that take into account all of the circumstances of the case." *See id.* For the reasons discussed below, the Court **FINDS** that an attorneys' fee award of 25% of the settlement fund is appropriate in this case.

First, the Class counsel has achieved a favorable recovery for Class Members. Favorable results are a relevant circumstance. *See Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d at 1311 (noting that counsel "obtained substantial success"). Although Class counsel admits that a $10 million award only represents approximately 12% of the maximum provable damages assuming complete success, the Court notes that counsel has achieved this result in the face of a vigorous defense mounted by Defendants. As indicated above, Plaintiffs survived Defendants' Motion to Dismiss and Defendants' subsequent challenges to this Court's order.

Second, this case presented substantial risks for Class counsel. Risk is also a

relevant factor in addressing the proposed fee award.  *See In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (noting that a 33% award "for attorneys' fees is justified because of the complexity of the issues and the risks").  As discussed above, this case involved complex issues of both fact and law, which were highly disputed by Parties.  Additionally, Plaintiffs claim that prolonging a resolution of the case would increase the risk that the funds available for a judgment would be depleted due to litigation expenses.

Third, the Court notes that counsels' representation of the Class on a contingency fee basis over approximately six years places a heavy burden on counsel and involves significant risk.  Counsel has incurred thousands of hours of attorney time and put forth hundreds of thousands of dollars in expenses on an "at-risk" basis.  (*See* Corrected Dietrich Decl. at 27.)  In complex cases, such as this, the risk of no recovery is substantial and must be balanced against an expectation of a sizeable award.  Class counsel claims they have litigated numerous actions on a contingency basis and many of them have resulted in no fee awards.  (*See* Mot. for Approval of Fees at 12.)

Fourth, counsel's fee request of 25% is consistent with the fees recovered in comparable cases.  Counsel provides numerous examples of cases in which a fee award of 30% was approved in settlements ranging from $1.7 million to $111 million.  (*See* Stewart Decl. at 13, Exs. 3-4; *see also* Mot. for Approval of Fees, App. A.)  Reviewing the data compiled from the mid-1970's to 2002 in Stuart J. Logan, Jack Moshman & Beverly C. Moore, *Attorney Fee Awards in Common Fund Class Actions*, 24 Class Action Rep 167 (2003), the Northern District of California found that for securities class action cases in the gross recovery range of $10 to $20 million, the range of the percentage of the award devoted to attorneys' fees was 7.6% to 55.6% with a mean of 29.5%.  *See In Re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 918 (N.D. Cal. 2005).  Thus, a proposed fee of 25% is consistent, if not below, the average award in similar complex actions.

Fifth, the proposed fee is reasonable in light of the lodestar amount.  "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.

Although counsel have not provided a detailed cataloging of hours spent, the Court **FINDS** the information provided to be sufficient for purposes of lodestar cross-check. *See In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306-07 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.")

Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended. (*See generally* Stewart Decl.; Zysman Decl.) The declarations indicate a total lodestar amount of $1,700,727.50 representing hourly fees for both attorney and paralegal time. (*See* Stewart Decl. at 1; Zysman Decl. at 2.) A settlement award of $2,500,000.00 and a lodestar amount of $1,700,727.50 results in a multiplier of 1.47. Such a multiplier is reasonable in light of the duration of the litigation and the risk assumed by counsel in accepting this case on a contingency basis. *See In re Prudential Ins. Co.*, 148 F.3d 283, 341 (3d Cir. 1998) (recognizing that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied" (*quoting* 3 Newberg § 14.03 at 14-5)).

Sixth, the lack of objection from any Class Member supports the attorneys' fees award. As indicated above, counsel provided notice and instructions on how to object to all potential Class Members. To date, counsel indicates that they are unaware of any objections. Additionally, Defendants do not object to an attorneys' fee award of 25%.

Accordingly, the Court **FINDS** that an attorneys' fee award of 25% of the settlement fund is appropriate in this case.

### C. *Reimbursement for Expenses*

Class counsel also requests reimbursement in the amount of $261,971.79 for expenses incurred in prosecution of this action. (*See* Mot. for Approval of Fees at 16.) Reimbursement of taxable costs is governed by 28 U.S.C. § 1920[2] and Federal Rule of

---

[2] Pursuant to 28 U.S.C. § 1920:

a judge or clerk of any court of the United States may tax as cost the following:

Civil Procedure 54[3]. In assessing the reasonableness of the reimbursement request, the Court is "reminded that it is generally not the practice of an attorney to bill a client for every expense incurred in connection with the litigation in question," and "[t]he attorney is expected to absorb some of the cost of doing business as an attorney . . . ." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). Such an award of expenses should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary. *See id.*; *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

Here, counsel requests reimbursements for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees. (*See* Stewart Decl. at 2; Zysman Decl. at 2.) Pursuant to the Court's Order, counsel provided supplemental declarations as to the expenses. [Doc. Nos. 152-53, 156.] Additionally, Defendants have indicated that they do not object to Plaintiffs' supplemental declarations regarding the reimbursement request. (*See* Defs.' Joint Statement of Non-Opp'n at 2.)

---

(1) Fees of the clerk and marshall;

(2) Fees of the court reporter for all or any part of stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursement for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses . . . .

28 U.S.C. § 1920.

[3] Rule 54 provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs . . . ." Fed. R. Civ. P. 54.

For the reasons discussed below, the Court **FINDS** the expenses listed above to be reasonable and necessary. "The reimbursement for travel expenses, both under 28 U.S.C. § 1920 and [Rule] 54(d), is within the broad discretion of the Court." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. at 1369. Here, lead counsel have provided the Court with a description of the reasons for the travel expenses. Postage, telephone, fax, and notice expenses are also generally recoverable. *See Greenspan v. Automobile Club*, 536 F. Supp. 411, 417 (E.D. Mich. 1982); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. at 1368-69. Filing fees and photocopies are also a necessary expense of litigation, in particular in complex securities class action litigation. The Ninth Circuit has also approved of reimbursement for messenger services as costs. *Harris*, 24 F.3d at 19. Additionally, the Court also finds that computerized legal research "is an essential tool of a modern efficient law office" and given the complexity of this case, the costs of online legal research services are also reasonable. *Robinson v. Ariyoshi*, 703 F. Supp. 1412, 1436 (D.Haw. 1989) (citing *United Nuclear Corp. v. Cannon*, 564 F.Supp. 581 (D.R.I. 1983)), *rev'd on other grounds*, 933 F.2d 781 (9th Cir. 1991); *see also Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993).

In order for the Court to award reimbursement for expert witness fees, the Court "must find that the expert testimony submitted was 'crucial or indispensable' to the litigation at hand." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. at 1366 (quoting *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 864 (9th Cir. 1986)). Here, Plaintiffs assert that the investigation of this case required the "retention and consultation with experts in the drug at issue, the FDA approval process, materiality, loss causation and damages." (*See* Mot. Final Approval of Settlement at 5.) Given the complex factual nature of this case, the Court **FINDS** that reimbursement for experts and consultants is reasonable in this case.

Lead counsel also request reimbursement for the expenses associated with the mediation sessions before the Honorable Daniel L. Weinstein (Ret.) and the Honorable Howard B. Wiener (Ret.). In support of this request, lead counsel cited several examples of

common fund cases in which mediation fees have been reimbursed. *See Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282, *22 (D.N.J. 2006); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004); *Carrabba v. Randalls Food Markets, Inc.*, 191 F. Supp. 2d 815, 834 (N.D.Tex. 2002). While none of these cases are controlling authority, the Court **FINDS** that mediation expenses in this case are both reasonable and necessary. This case involved protracted litigation, which would not have come to an end prior to trial without the assistance of a mediator.

Accordingly, the Court **APPROVES** of lead counsel's requested reimbursements in the amount of $261,971.79.

*Conclusion*

1) The Court **FINDS** that the notice afforded to Class Members is adequate and sufficient to inform Class Members of their rights.

2) Finding that the fairness factors favor settlement, the Court **APPROVES** the settlement agreement and the proposed plan of allocation.

3) The Court **APPROVES** of Mr. Carroll's requested reimbursement in the amount of $40,000.00.

4) The Court **APPROVES** the requested attorneys' fees award and **GRANTS** counsels' Motion for Approval of Attorneys' Fees in the amount of 25% of the settlement fund.

5) The Court **APPROVES** of lead counsel's requested reimbursements in the amount of $261,971.79.

**IT IS SO ORDERED.**

DATED: May 31, 2007

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:     Magistrate Judge McCurine
        All Counsel of Record